## ABBY M. BROOKS v. FIRST PRESBYTERIAN CHURCH.

### ERROR TO THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY.

Argued May 2, 1889—Decided October 7, 1889.

[To be reported.]

(*a*) By a codicil, executed less than 30 days before his death, a testator bequeathed his residuary estate to a church corporation for charitable uses, and, soon after his death, the secretary of the board of trustees, who had written the will, put himself in correspondence with a daughter of the testator residing in a distant city :

(*b*) The daughter, having no knowledge of the amount of the estate or of the invalidity of the codicil, was induced, by strong expressions of friendship and offers of gratuitous assistance on the part of the secretary, to execute, without consideration passing from the church, a release to the executor and an assignment to the church of all her interest in the estate.

1. Under the evidence, the secretary by his conduct established between himself and the daughter a relation of trust and confidence which he was not at liberty to abuse to her prejudice, either by a misrepresenta-

tion of the facts or by a suppression of the truth in relation to her interest in the estate.

2. The church being a mere volunteer, giving no consideration for the daughter's share of the estate received by it under her release, it could not claim exemption from the legal consequences of its agent's acts, and was liable to the daughter's action for money had and received for her use.

3. Wherefore, the evidence being such as to authorize the jury to find that the release of the daughter, interposed as a defence to her action against the church to recover her share of the residuary estate, was fraudulently procured and therefore void, it was error to withdraw the case from the jury by instructions to find for defendant.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 353 January Term 1889, Sup. Ct.; court below, number and term not given.

On September 18, 1884, Mrs. Abby M. Brooks brought assumpsit against the First Presbyterian Church and Congregation of Meadville, declaring on the common counts. The defendant pleaded non assumpsit.

At the trial on January 22, 1889, the plaintiff showed that she was a daughter of Alanson Lindley, who died on May 21, 1881, leaving to survive him as his heirs at law, the plaintiff, Mrs. Helen M. Bigelow and Lucy K. Lindley; that said deceased had left a will dated May 29, 1880, with a codicil dated August 31, 1880, and another codicil dated May 13, 1881; that the said will and codicils were duly admitted to probate, the last of the said codicils being as follows:

"I, Alanson Lindley, the within named testator, do hereby make and publish this second codicil to my last will and testament, bearing date May 29, 1880, in manner following to-wit:

"All the residue of my estate of whatsoever nature, which has not already been disposed of, I hereby devise, give and bequeath to the First Presbyterian Church and Congregation of Meadville, Pa., in trust for the benefit of the poor of the said Church, and for such other beneficent objects as shall seem just and proper to them, but that the interest of this sum given shall be so used, and the principle shall be kept as a perpetual fund, to be known as the 'Alanson Lindley Fund for the Benefit of the Poor.'

" In testimony whereof I, Alanson Lindley, the testator, have to this codicil set my hand and seal this thirteenth day of May, A. D. 1881. "'

The plaintiff called Dr. A. McLean White, who testified that he was secretary of the board of trustees of the First Presbyterian Church, defendant, at the time when Mr. Lindley died; that he had written the will of deceased and both codicils, and was one of the appraisers of the estate; that the appraisement, begun on June 8, 1881, and completed later in the same month, aggregated $45,725.09 : that about October 1, 1881, Edward Northam, executor of Mr. Lindley, had paid over to the trustees of the defendant church assets of the estate amounting to $19,257.14, representing the residuum of the estate after payment of debts, legacies, etc., and that this payment was made by the executor without the order of court, but upon papers executed by the heirs at law. The witness identified certain letters written by him to the plaintiff, hereafter referred to. The plaintiff rested.

The defendant put in evidence a release and assignment, duly acknowledged before a notary, which was as follows :

" I, Abigail M. Brooks of the city of Atlanta, Georgia, heir and legatee of my father, Alanson Lindley, deceased, late of Meadville, Pa., having been furnished with a copy of the last will and testament of my father, now deceased, and being desirous that the said will and testament shall be sacredly regarded and in all particulars complied with, do hereby ratify and confirm the same, in consideration of one hundred dollars a balance of an annuity claimed by me, and of fifty dollars interest claimed by me to be due on a note of my father's, given to me by A. K. Spencer, when he paid me my interest in my father's estate. And I do hereby request and direct Edward Northam, executor of the estate of my father, to pay over to the several legatees named in the will, the legacies therein devised, according to the terms therein expressed, and especially any balance that may be devised to the First Presbyterian Church and Congregation of Meadville, Pa.; and, after the full and complete payment to me of the one hundred and fifty dollars claimed by me to be due and unpaid, and also after all the other legacies mentioned in said will are paid, I hereby assign all interest I may have in any remainder to the First Presbyterian Church and Congregation aforesaid.

" Witness my hand and seal this eleventh day of June, 1881.
"ABBY M. BROOKS, [L. S.] "

The defendant also put in evidence the record in the Orphans' Court of proceedings upon the settlement of the account of the executor, wherein the plaintiff and Mrs. Bigelow had filed exceptions to said account, on the ground that credit had been improperly taken for the payment of the residue of the estate, $19,257.14, to the First Presbyterian Church, which exceptions had been dismissed and the account confirmed.

In rebuttal, the plaintiff's counsel read in evidence letters to the plaintiff written by Dr. A. McLean White, dated May 30, 1881, and June 7, 1881, respectively.    These letters sufficiently appear in the opinion of the Supreme Court.    The plaintiff, called to the witness stand, testified that at the time of her father's death she resided at Atlanta, Ga., and had resided there about twelve years ; that she was the eldest of the three children, and until she received the letter of May 30, 1881, from Dr. White, she had not heard of her father's death ; that when she executed the foregoing paper she had no knowledge of the amount of her father's estate, and did not know that his death within thirty days after the making of the codicil to his will invalidated the codicil ; that she did not consult counsel, had not deliberated upon the subject, and was in very feeble health, being about to go to the mountains ; that she was paid $150 by an order on the First Presbyterian Church for that amount and gave a receipt therefor.

The defendant then put in evidence the receipt of plaintiff to Edward Northam, executor, dated June 10, 1881, for $150, in " full settlement for amount claimed to be due me from the estate of my father; " also the order of J. J. Davis, president, upon the treasurer of the First Presbyterian Church, to pay to Mrs. A. M. Brooks, or order, $150 "in satisfaction of interest in her father's estate in full."

The plaintiff was then recalled and her counsel offered to prove that of the sum covered by her foregoing receipt, $50 was for interest on a $1,000 note, and $100 was for money her father owed her on another matter.    This was admitted by the defendant's counsel, and the case closed on the testimony.

The plaintiff's counsel requested the court to charge the jury :

1. That to sustain the release offered in evidence by defendant, in the position of the parties under all the evidence, the burden of proof is upon it to show to the satisfaction of the jury that the same was executed and delivered with full knowledge of the character, intendment, and effect of the same ; and if the jury find from the evidence that the same was procured by the confidence of the testator and the plaintiff, having knowledge of all the facts, without communicating the character, intendment, and effect of the release, the same is a constructive fraud, prohibited by law and void; and, the plaintiff having shown that she is one of the children and heirs at law of the testator, and that the defendant has her portion of the residue of the estate of her father, she is entitled to recover the same in this suit.[5]

The court, WICKHAM, P. J. 36th judicial district, specially presiding, charged the jury as follows :

Alanson Lindley died on May 21, 1881, leaving behind him a will dated May 29, 1880, to which was attached a codicil bearing date of May 13, 1881. In the main body of the will, and in a previous codicil, there are certain bequests, legacies and provisions, which it is not important for us to consider. The codicil of May 13, 1881, reads as follows : . . . . .

Under the law of Pennsylvania, gentlemen, this codicil, giving to the defendant the residue of the testator's estate for charitable purposes, was void and of no effect. There is nothing, however, in the law to prevent the heirs of the deceased from ratifying and approving a charitable bequest, and this, perhaps, is often done ; nor is there anything in the law or good morals preventing the trustee, in this or any other similar case, from asking, or making proper requests to the heirs of a testator to do this. The trustee, or those interested in the trust, have a right to make all proper and fair efforts to secure the ratification of the void part of a will.

In the present case, gentlemen, the plaintiff, Mrs. Brooks, the daughter and heir of the deceased, executed an instrument which reads as follows : . . . . .

It seems, gentlemen, from the evidence (although this is not any important part in the case), that somewhat similar papers were executed by her co-heirs, the other children of deceased, and by virtue of these writings the executor of the decedent

turned over to the defendant securities, etc., worth nominally, $19,257, but actually, if the evidence offered on behalf of the plaintiff is believed, some $5,000 or $6,000 less.

The plaintiff now seeks to recover one third, her share as heir of her father, of the value of the amount of the legacy or sum received by the defendant.   [She is, of course, confronted with her own writing, executed, as the evidence shows, after due consideration and with all the necessary formalities.] [1]   To escape its obvious legal effect, she alleges it was obtained from her by fraud and deceit, and therefore, it is not binding. [Fraud, when relied upon to overthrow a written instrument, like that under consideration, must be proved, not merely by such evidence as in an ordinary case is sufficient, but to use the language of the Supreme Court, by evidence that is "clear, precise and indubitable."   It is not enough that we have reason to suspect unfair dealing and misapprehension.   There must be actual fraud fully and clearly established.] [2]

[Looking now at all the evidence in this case, the court is unable to see therein enough to justify a verdict for the plaintiff.   Certainly the evidence is not of that "clear, precise and indubitable" kind required by the law.] [3]   [That Doctor White, in writing to the plaintiff, failed to furnish her with legal opinions as to her rights, or to tell her the value of the residuary estate, is not enough to warrant the court and jury in striking down the written assignment.] [4]   Doctor White was not the executor of the will, and seems to have been a stranger to the plaintiff.   In his first letter to her he only undertakes and offers to fully inform her in regard to the particulars of her father's death and of his will, and he states to her that if she wishes to know these things, she can call on him, with the assurance that he will furnish her with the information.   That is all he seems to have undertaken to do for her benefit.   That he undertook to do more for the benefit of the church with which he is connected, and of which he is the trustee of the charity, is quite apparent.   Seemingly, gentlemen, he was not aware himself of the value of the residuary estate until in the latter part of June, 1881.   The assignment bears date the 11th of the same month.   Moreover, it is not at all clear, even if he were aware that the codicil might involve a contest, provoke litigation, that it was either voidable or void.

That does not appear from the evidence in this case. [Gentlemen, for the reasons just given, the court is constrained to instruct you to render a verdict in favor of the defendant.]⁶ If such direction is wrong the case is left in such shape that it can be reviewed by the Supreme Court, and justice be ultimately done to the plaintiff.

The jury returned a verdict for the defendant as directed. Judgment having been entered, the plaintiff took this writ, assigning as error:

1-4. The portions of the charge included in [ ]¹ ᵗᵒ ⁴
5. The refusal to affirm the plaintiff's point.⁵
6. The instructions to find for the defendant. [ ]⁶

*Mr. Joshua Douglass* and *Mr. G. W. Haskins* (with them *Mr. A. B. Richmond*), for the plaintiff in error:

1. It is the suppression and withholding of just information as to the material facts connected with the codicil to her father's will, of the quantity and value of the estate and her rights therein which the plaintiff was called on to release, of which she complains. An election by matter in pais can only be determined by plain and unequivocal acts under a full knowledge of all the circumstances and of the party's rights. One is not bound to elect until he is fully informed of the relative value of things he is to choose between, and if he make an election before the circumstances necessary to a judicious and discriminating choice are ascertained, he will not be bound: Anderson's App., 36 Pa. 476; Kreiser's App., 69 Pa. 194.

2. The communications of Dr. White to the plaintiff may not have originated in any evil design to defraud the heir of the testator, but they tended most strongly to deceive and mislead the plaintiff, who confided in her professed friend that he would inform her fully and advise her well. This conduct was a constructive fraud upon the plaintiff, and avoids the release in question as effectually as actual fraud. Such cases do not require for their relief " clear, precise and indubitable proof," as defined by the court to the jury: Darlington's App., 86 Pa. 512; Miskey's App., 107 Pa. 611; Worrall's App., 110 Pa. 349; Cunningham's App., 122 Pa. 464; Bixler v. Kunkle, 17 S. & R. 298; Elbert v. O'Neill, 102 Pa. 302; Shea's App., 121 Pa. 302.

*Mr. W. R. Bole* and *Mr. Pearson Church* (with them *Mr. J. W. Smith*), for the defendant in error:

1. Is the title of the church to be avoided by the non-feasance of one of its trustees, who, so far as the evidence shows, acted as a volunteer in all his negotiations with the plaintiff? But, conceding that the church was bound by his acts, what was the measure of his duty in dealing with the plaintiff? Was he bound to know, and to inform her fully, both as to the facts and the law? He was a stranger to her. He was neither executor nor legatee. He stood in no fiduciary relation whatever. On what principle, then, can his silence be construed to be a fraud on the plaintiff? None of the cases cited by the plaintiff meet the question.

2. The whole record of the Orphans' Court proceedings was in evidence. It was offered to show that the plaintiff's claim was res judicata. The court below denied it this effect, but we contend that such was its legal effect; and, therefore, the judgment in this proceeding was right, even if there were error in the charge on the other branch of the case. The decree of the Orphans' Court was conclusive: Otterson v. Middleton, 102 Pa. 78; Lex's App., 97 Pa. 292; Cook v. Petty, 108 Pa. 138; Otterson v. Gallagher, 88 Pa. 355; Dundas's App., 73 Pa. 474; Kline's App., 86 Pa. 367; Guenther's App., 4 W. N. 41.

*Mr. Haskins*, in reply:

Estoppels to be binding must be mutual. No party can take advantage of a judgment or decree, if he would not have been prejudiced by it, if it had been otherwise. It is only between the same parties or their privies that a judgment of a court of concurrent jurisdiction is conclusive. Those are held to be parties who have a right to control the proceedings, to make defence, to adduce testimony and cross examine witnesses, and to appeal from the decision if any appeal lie: Chandler's App., 100 Pa. 262; Peterson v. Lothrop, 34 Pa. 223; Freeman v. Cadwell, 10 W. 9; Kittera's Est., 17 Pa. 416; Dundas's App., 73 Pa. 474; Third Ref. D. Church's App., 88 Pa. 503.

OPINION, MR. JUSTICE STERRETT:

The sole question for our consideration is whether the evidence was sufficient to have warranted the jury in finding that

the release, interposed as a bar to plaintiff's claim, was fraudulently procured and therefore void. If it was wholly insufficient to justify such a finding, there was no error in withdrawing it from the consideration of the jury and directing a verdict for defendant.

The claim against the corporation defendant appears to have originated as follows: Plaintiff's father, by the second codicil to his will, executed eight days before his decease, bequeathed his residuary estate, amounting nominally to nearly $20,000, to the defendant, in trust for charitable purposes. It is conceded that under our statute the bequest, thus made less than one calendar month before testator's death, was absolutely void, and plaintiff as one of his heirs-at-law was legally entitled to one third of said residuary estate. In due course of administration it would have been converted into money and she would have received her share of the proceeds; but, about three weeks after her father's death she was induced to execute a paper releasing all claim thereto, and requesting the executor "to pay over to the several legatees named in the will the legacies therein devised, according to the terms therein expressed, and especially any balance that may be devised to the First Presbyterian Church and Congregation of Meadville, Pa.," the defendant in this suit. In less than six months thereafter the executor assigned and transferred to defendant the residuary estate, nominally amounting to $19,257, consisting of mortgages, judgments, and other evidences of indebtedness, the real value of which is said to be about $13,000. Afterwards plaintiff discovered, as she alleges, that the release had been fraudulently procured from her by Mr. White, who was an officer and agent of the corporation defendant, and thereupon she determined to insist on claiming her interest in the residuary estate. The release, being regular on its face, was of course a sufficient warrant to the executor for disposing of the residuary estate as he did, and hence plaintiff had no recourse to him. She then brought this suit to recover the value of her interest in the residuary estate, which came into defendant's possession by virtue of the release and assignment aforesaid.

Evidence was introduced for the purpose of showing the invalidity of the release, but the learned judge who presided at

the trial was of opinion that it was insufficient to justify a verdict in favor of plaintiff, and he accordingly directed the jury to find for defendant.

It is not our purpose to refer in detail to the evidence relied on by plaintiff, but a careful consideration of it as a whole has led us to a different conclusion.    Dr. A. McLean White, through whose active agency the release was procured, was a trustee of the corporation defendant and secretary of the board of trustees.    As the confidential friend of the testator he wrote and witnessed the will, and, as appears by printed exhibit contained in defendant's paper book, he was present when the will was read, on the day after the funeral, and heard Mr. Bole, who had been general counsel for testator, announce that the second codicil, containing the residuary bequest to defendant, was void for want of time between the date thereof and the death of testator.    A few days thereafter, with full knowledge of that fact, and, as he himself declares, knowing everything about testator's property and how he disposed of it, Mr. White addressed a letter to plaintiff, in which he volunteered to furnish her "all the details frankly and carefully," in relation to her father's death and the disposition he made of his property. He also suggested that there was some interest coming to her on a certain note, which he would endeavor to secure for her, etc.    The letter in full is as follows:—

"MEADVILLE, PA., May 30, 1881.

" Mrs. A. M. BROOKS, Atlanta, Ga.

"Dear Madam: As an intimate and confidential friend of your father, having written his will and knowing everything about his property and how it was disposed of by him, I write to say to you that if you desire to communicate with me in order that you may be fully informed in regard to the particulars of his death and his will, you can do so with the assurance that I will take great pleasure, out of regard to his memory, to furnish all the details frankly and carefully.

" The letter you wrote to him on the 16th instant did not get into his hands, which I am sorry for.    It is now before me, and its contents does honor to you, which I know would have given him unspeakable pleasure had he been permitted to see or hear it read.    He spoke of you often to me, and his heart went out towards you with due paternal affection.    Mrs. Big-

elow did not get here until after he died. She is now ill at the old home, but expects to leave for the East to-morrow or the day after.

" Although your father had himself settled his bequest to you and had your receipt in full for your interest to his estate, yet, I think there is some interest coming to you on that $1,000 note, which · I think the executors would pay you by my request. If such is the case and you will inform me, I will use my influence to secure what balance of interest may be yours, if you feel satisfied that you should have it. This will be without any expense to you. What I will do will be out of a deep regard for the sense of justice that your father desired to maintain, and which for his sake I will aid to carry out."

After receiving her prompt reply, he again wrote June 7, 1881, giving a detailed account of her father's last illness and death, etc., and then referred to the residuary bequest to the church, thus:

" He was deeply interested in establishing a fund for the poor of his church. That troubled him for a long time how to do it. He thought at first of making Mr. Northam the trustee, but when he remembered that the church was incorporated and perpetual in its duration, he made it his trustee. As he had many bad debts, some outlawed, it is hard to tell what the remainder may be. Everything else must be paid—his legacies, debts, a law suit, just begun against him by the Whitmans, must be fought again, lawyers' fees; but if we could get the estate settled without delay, and thus save executors' and court fees, it would prove much more than if prolonged, and that brings me to the business and conclusion of this long letter.

" In conclusion, let me say in regard to the claims you present . . . . . The executor, Mr. Northam, is perfectly willing to pay over to you everything that the board of trustees of the First Presbyterian Church instructs him to pay, which, of course, must be deducted from what your father left the poor of the church. Without the consent of the board, however, he cannot pay anything to you legally. I have no doubt as to either of your claims in equity; most probably under the will neither of them could be enforced, but I have this assurance from a part of the board of trustees, the secretary of which I

have been for quite a number of years, that having written your father's will, and being fully conversant with his desires, that if I fully concur in recommendation to the board that this amount shall be given to you out of the fund entrusted to the church, and present a paper from you that will be satisfactory to the board, and also to the executor, as his voucher to be passed upon by the court when he closes his account, then I can get a resolution passed by the board to pay the $150 over to you, or rather have Mr. Northam do so, for he has one year to settle his matters, and I think I can get this from him at once and without delay.

"I have, therefore, prepared a paper about like that the other heirs signed, which was done to cheapen and expedite the settlement of the estate, so that it might be saved and not be unnecessarily wasted. Upon the return of that paper to me, I think that within two weeks at farthest I will be able to send you a draft for the whole amount, or will instruct the executor to do so.

"I know there will be no exception taken to your claim for interest, and I will urge the other to be paid. I have not the least doubt you will get both, but should anything occur to prevent it (not probable), I will return you the paper at once and also your receipt. Let me add in confidence this: This is because I honored your father and desire to act justly towards *all* his children. I will write Lucy's will soon. She has so requested me. I feel that it is her duty to make her sisters her residuary legatees. I shall use all my influence in that direction, for I believe your father would desire it, and it is just in every respect. I shall be the friend of yourself and Mrs. Bigelow, and anything you desire to know I will cheerfully communicate it. The paper inclosed after being dated and signed must be acknowledged before a notary public, not an alderman or justice. Please sign the receipt also."

It is impossible to read the letters above quoted from, and consider them in the light of the evidence, without coming to the conclusion that the main, if not the sole object of the writer thereof, in opening the correspondence with plaintiff, was not to "frankly and carefully" furnish her with such information in regard to the situation of her father's affairs as she was most interested in knowing, or to assist her in obtain-

ing from his estate what she was justly and legally entitled to, but to conceal from her the fact that the residuary bequest was null and void, and to induce her to act upon the belief that she had no claim whatever on her father's estate (except, perhaps, the pittance of $150, balance of interest, etc., above referred to), and thus by misrepresentation of facts and suppression of the truth obtain from her, without consideration, the release of her vested interest in the residuary estate. These, of course, were questions of fact for the jury, and should have been submitted to them under proper instructions.

The evidence tends to show that by strong professions of friendship, and expressions of desire to gratuitously render her all the assistance in his power, even to the extent of persuading her sister Lucy to make her one of her legatees, etc., he invited and succeeded in establishing, between himself and plaintiff, a relation of trust and confidence which he was not at liberty to abuse, to her prejudice, by misrepresentation of facts or suppression of the truth in relation to her interest in the estate. His assertion, that without the assent of the corporation defendant, the executor could not legally pay her anything, not even the $150 that she claimed her father owed her, was not only untrue, but it was tantamount to a declaration that the residuary bequest to defendant was valid and binding. It is difficult to understand how he could have supposed there was any truth in either. But, whether he so believed or not, the evidence tends to show that plaintiff was misled as to the true situation of her father's estate, and thereby induced to execute the release in question.

The defendant corporation is a mere volunteer. It gave no consideration for plaintiff's share of the residuary estate. The release, it is true, recites a pecuniary consideration of $150, but that represents the two items claimed by plaintiff as due from her father. On the trial she offered to prove in surrebuttal that $50 thereof was interest due on the $1,000 note, and the remaining $100 was money her father owed her on another matter. Defendant's counsel waived the proof by admitting the facts as stated in the offer. Plaintiff is thus made to occupy the somewhat anomalous position of having provided the pecuniary consideration for her own release. In point of fact, the defendant gave no consideration for the interest it

claims to withhold from plaintiff by virtue of her release.    It is a mere volunteer and cannot claim exemption from the legal consequences of its agent's acts.

Without further comment on the evidence, we are of opinion that it was proper for the consideration of the jury, and should have been submitted to them.

> Judgment reversed, and venire facias de novo awarded.